UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CEDRIC YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY McGILL, *et al.*,<br><br>Defendants. | 3:09-CV-1186 (CSH)<br><br>NOVEMBER 6, 2013 |

**RULING ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

Plaintiff Cedric Young, a former prisoner at Northern Correctional Institution ("NCI") in Somers, Connecticut, brings this civil rights action against prison officials and personnel pursuant to 42 U.S. C. § 1983, alleging mistreatment while he was incarcerated.[1] Plaintiff alleges that on or about January 5, 2009, while he was a prisoner being escorted back from the prison medical unit, he was subjected to excessive force by the prison guards. In particular, he contends that the defendant prison guards physically assaulted him – including, *inter alia*, slamming plaintiff's body

[1] The Court takes judicial notice that Young was released from NCI on or before April 3, 2013, but thereafter arrested for the Connecticut Class B felony of robbery in the first degree with a firearm and the Class A misdemeanor of interfering with and resisting an officer, which both occurred on April 8, 2013. Upon entry of a guilty verdict on each of the two charges (on July 8, 2013), Young was sentenced on July 22, 2013 to 114 months (9 years, 6 months) in prison and 10 years of special parole for the felony and 1 year of prison for the misdemeanor. He is currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut.

against the prison's dayroom window; handcuffing and placing plaintiff in the shower; choking and violently slamming plaintiff to his cell floor; pushing their knees into plaintiff's back; striking the back of plaintiff's head with a closed fist; and digging their fingers into plaintiff's eyes, face, and jaw. Doc. 55 (Second Amended Complaint), ¶¶ 14, 15, 17-19.

Among his many claims, plaintiff alleges that the prison medical staff were deliberately indifferent to his medical needs in that they "failed and refused to examine and treat [him] after [he was] assaulted by the defendant officers." *Id.*, ¶ 22. Plaintiff asserts that, due to his abusive treatment by the prison guards on January 5, 2009, he suffered extreme pain resulting from untreated injuries to his back, head, jaw, eyes, one finger, and wrists. *Id.*, ¶¶ 33-34. He alleges that he was not seen by the prison physician, defendant Carter Wright, until approximately 7 days after he sustained his injuries. *Id.*, ¶ 33

In addition, plaintiff alleges that the defendant prison guards subjected him to "cruel and unusual" conditions of confinement, in violation of the Eighth Amendment, by employing "excessive and unnecessary use of restraints." *Id.*, ¶¶ 23-24. He further maintains that "defendants conspired with one another" to inflict such physical abuse and neglect upon him. *Id.*, ¶ 30. The conspiracy allegedly involved, *inter alia*, the submission of false incident and medical reports regarding his injuries and the manner in which said injuries were incurred. *Id.*, ¶ 30.

Pending before the Court is plaintiff's motion to compel three defendant prison medical personnel to respond to certain interrogatories and document requests plaintiff served upon them on January 15, 2012.[2] Doc. 80. In particular, plaintiff seeks to compel physician Carson Wright and

[2] Defendants sought and received a series of extensions of the deadline to respond to said interrogatories and production requests [Doc. 71 & 78]. As a result, defendants did not serve responses on plaintiff until the end of July 2012, at which time they essentially objected to all

nurses Wendy Sanders and Christopher Kay to provide answers to plaintiff's second set of interrogatories (numbered 1 through 6), and produce documents in response to plaintiff's third request for production of documents (numbered 1 through 6).[3]

## II. STANDARD FOR MOTION TO COMPEL

Pursuant to Rule 37(a)(3), Fed. R. Civ. P., "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if, *inter alia*, "a party fails to answer an interrogatory submitted under Rule 33" or "fails to respond that inspection [of requested documents] will be permitted — or fails to permit inspection — as requested under Rule 34."[4]

In a federal civil proceeding, parties may only obtain discovery regarding a non-privileged matter that is relevant to a claim or defense involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). For this purpose, relevance is viewed broadly in that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* *See also Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 21 (D.Conn. 2008); *Allied-Signal, Inc. v. Allegheny Ludlum Corp.*, 132 F.R.D. 134, 136 (D. Conn.

---

questions and requests with a boilerplate "Attachment." *See* Doc. 80-1, p. 5, 11, & 18.

[3] Plaintiff describes Carson Wright as "a physician at the 'NCI' for UCONN correctional managed healthcare," who had "legal authority over the medical nurses within the NCI." Doc. 55, ¶ 10. Plaintiff alleges that Wendy Sanders and Christopher Kay were "both medical nurses within NCI" at all times relevant to his Amended Complaint. *Id.*, ¶ 11.

[4] Rule 33 specifies the permissible number, scope, and response time for interrogatories in general. Fed. R. Civ. P. 33 (a)-(b). Rule 33 also mandates that with respect to the party on whom the interrogatories are served, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." *Id.* at 33(b)(3).

Rule 34 enables any party to serve upon any other party to an action a request for documents, electronically stored information, and other "designated tangible things." Fed. R. Civ. P. 34.

1990). Relevancy, construed liberally, creates a broad vista for discovery, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1988), such that a trial becomes "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).[5]

Nonetheless, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Thus, discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" does not fall within the scope of Rule 26(b)(1).

Furthermore, even if a discovery request seeks relevant information or material, a party served with that request may object on such grounds as: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or "(iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i) - (iii). "To assert a proper objection on

---

[5] As the United States Supreme Court articulated in *Oppenheimer Fund*:

> Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

437 U.S. at 351 (internal citation and footnote omitted). *See also generally* 4 J. Moore, Federal Practice ¶ 26.56 [1], p. 26–131 n. 34 (2d ed. 1976) ("[T]he court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation.").

this basis, however, one must do more than 'simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad.'" *Sullivan v. StratMar Systems, Inc.*, 276 F.R.D. 17, 19 (D.Conn. 2011) (quoting *Compagnie Française d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984)). *See also Rajaravivarma v. Bd. of Trs. for Connecticut State Univ. Sys.,* 272 F.R.D. 315, 316 (D. Conn. 2011) (same).

Rather, "the objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Sullivan*, 276 F.R.D. at 19 (quoting *Compagnie Française*, 105 F.R.D. at 42). *See also Leumi Fin. Corp. v. Hartford Acc. & Indem. Corp.*, 295 F.Supp. 539, 544 (S.D.N.Y.1969) ("The burden of proof is generally on the party that objects to an interrogatory."); *Shannon v. New York City Transit Auth.*, No. 00 CIV. 5079 (RWS), 2001 WL 286727, at *1 (S.D.N.Y. Mar. 22, 2001) ("The burden is on the party resisting discovery to explain its objections and to provide support therefore."); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

Ultimately, "[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Yancey v. Hooten*, 180 F.R.D. 203, 207 (D.Conn.1998) (citations and internal quotation marks and punctuation omitted).

## III. PLAINTIFF'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION REQUESTS

### A. Plaintiff's Interrogatories and Production Requests at Issue

In the case in suit, Young requests that the Court compel defendants Wright, Sanders and Kay, medical personnel at NCI, to answer six interrogatories and to fulfill six production requests. At the outset, the Court notes that a number of the interrogatories and production requests at issue relate to plaintiff's examination by an optometrist on February 17, 2009. *See* Doc. 80-1, p. 2 (¶¶ 2, 4, 5) & p. 22 (¶¶ 2, 3). As defendants point out in their opposing papers, "the items plaintiff seeks relate to . . . a date of February 17, 2009 *long following* [*i.e.*, 44 days or approximately 6weeks after] the date of January 5, 2009," the date upon which plaintiff was allegedly assaulted by the NCI prison guards. Doc. 84, p. 1 (emphasis added). If, as plaintiff alleges, he saw Wright, the prison physician, within seven days after his injury, plaintiff's "physical and visual exam[ination]" relating to the "injuries he sustained on Jan[uary] 5, 2009" occurred in mid-January, well in advance of February 17, 2009. *See* Doc. 55, ¶ 33.

In the liberal spirit of discovery under the Federal Rules, the Court may afford plaintiff a broad time frame for relevant medical treatment of his alleged injuries, thereby encompassing February 2009. Nonetheless, the Court must still examine the particular substance of the interrogatories and requests to determine whether they are designed to "lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1).

Plaintiff's interrogatories specifically ask whether each medical defendant worked in the medical unit at the NCI on February 17, 2009; who were "the medical personnel in charge of answering inmate requests and medical grievances in the medical unit;" on "what date was [plaintiff]

reffered [sic] to the Optometrist to have his eyes examined;" "what date did the plaintiff actually see the Optometrist after he filed the medical grievance on Jan[uary] 23, 2009" with respect to "the injuries he sustained" on January 5, 2009; and whether each medical defendant can "determine [the existence of] nerve damage from an x[-]ray." Doc. 80-1 ("Plaintiff's Second Set of Interrogatories," dated January 16, 2012), p. 2 (¶¶ 1-6).[6]

With respect to the production requests, plaintiff initially requests that each medical defendant produce "[a] copy of any and all medical research studies and[/]or medical opinions from other Optometrist doctors including Doctor William Ehlers indicating that 'It is commonly natural for [A]frican [A]mericans to develop dark brown patches in their irises (eyes) without any trauma being caused.'" Doc. 80-1, p. 21 (¶ 1). Plaintiff argues that such an article is relevant because Dr. Ehlers "stated it was 'true.'"[7] *Id.*

Plaintiff also requests production of: "[a] copy of all medical personnel who worked in the medical unit at the N.C.I." on the date of "Feb[ruary] 17, 2009;" *id.*, p. 22 (¶ 2); "[a] copy of the medical unit log book for the date Feb[ruary] 17, 2009;" *id.* (¶ 3); "[c]opies of all units['] log books that def[endant] Sanders signed when she passed out the evening medication on the date Jan[uary] 5, 2009;" *id.* (¶ 4); "[a] copy of the policy or directive of the 'Restraint Policy,' or 'Double Cell Policy,' of the prisoners in phase 1 at the N.C.I.;" *id.* (¶ 5); and "[a] copy of all and any handheld video footages [sic], and all and any Nice [sic] vision footages [sic] for the incident of Jan[uary] 5,

---

[6] The Court notes that these same interrogatories are repeated at pages 8 and 15 of plaintiff's papers [Doc. 80-1] in support of his Motion to Compel [Doc. 80].

[7] Plaintiff does not inform the Court whether William Ehlers was the optometrist who examined him in February of 2009 or under what circumstances plaintiff may have interacted with Dr. Ehlers.

2009 in the 1 [E]ast [U]nit at the N.C.I.;" *id*., p. 23 (¶ 6).

**B. Defendants' Objections**

With one exception, each of the three medical defendants, Wright, Sanders, and Kay, has objected to all six interrogatories and six document requests with the "General Objections" attached to each defendant's responses as "Attachment A."[8] Doc. 80-1, p. 5, 11, & 18. These "General Objections" are identical for all three defendants and set forth, in "boilerplate" fashion, a list of objections and/or exclusions from discovery appearing in Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) and 26(c) and/or recognized at common law. Specifically, they assert that the requests seek information or documents "not reasonably calculated to lead to the discovery of admissible evidence," "protected by the attorney-client privilege or the work product privilege," and "already in the possession and/or control of the plaintiff." Doc. 80-1, p. 5 (¶¶ 1-3).[9] Defendants also assert that the requests are "unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive." *Id.* (¶ 4). Defendants further contend that the interrogatories and production requests have been "posed solely to annoy, harass, embarrass, oppress, or to impose an undue burden or expense." *Id.* (¶ 5). Moreover, defendants assert that said interrogatories and production requests "constitute an invasion of privacy, seek matters not the subject of final determinations, and would jeopardize the safety and security of the detention centers,

---

[8] The only variation in the "Answers" of the three defendants to plaintiff's interrogatories is Wright's answer of "No" with respect to interrogatory 6, which asks "can you determine nerve damage from an x-ray?" *See* Doc. 80-1, p. 17 (¶ 6). All other answers of all three defendants state, "Objection. *See* Attachment A." *Id.*, p. 4, 10, & 17.

[9] The Court has cited the set of responses from defendant Sanders. However, the identical responses of defendants Kay and Wright appear at Doc. 81-1, p. 11 & 18.

employees and detainees." *Id.* (¶ 6). Lastly, defendants characterize the interrogatories and production requests as "overly broad, not limited in time and scope" such that they constitute a "fishing expedition," and "seek materials that are irrelevant to the narrowly drawn allegations of the plaintiff's complaint."[10] *Id.* (¶ 7).

None of the objections is tailored to address any particular interrogatory or production request, leaving the Court and plaintiff to ponder which objection applies to which interrogatory or production request. Defendants also fail to make any factual demonstrations to prove the existence of the circumstances giving rise to their objections.

C. **Analysis**

As set forth *supra*, it is the burden of the objecting party to do more than intone the familiar litanies of objections to interrogatories and production requests. *See, e.g., Sullivan,* 276 F.R.D. at 19. Rather, the objecting party must demonstrate how each request is either not relevant, overly broad, burdensome or oppressive. That is, "the objecting party bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits." *Id.*

In the case at bar, defendants have failed to link their objections to the specific interrogatories and production requests. This lack of specificity provides the Court with little

[10]With respect to lack of relevance, defendants' one-paragraph "Objection" to the present motion to compel asserts that "the items plaintiff seeks relate to some unknown matter on a date of February 17, 2009" and also "appear to relate to an attempt to create a cause of action for medical malpractice which does not lie in the instant case." Doc. 84, p. 1. The Court finds this cursory argument unpersuasive in that defendants present no supporting facts or circumstances.

assistance and can result in a finding that defendants have failed to meet their burden to support said objections. The Court will thus exercise its discretion to examine the particular questions and requests and determine whether the defendants' listed objections apply on the face of the queries or requests (*i.e.*, without any further explanation).

With respect to interrogatories 2, 4, and 5, I find that, absent explanation or proof of undue burden or prejudice to defendants, these questions may stand as "relevant" under the broad view of relevance set forth in Fed. R. Civ. P. 26(b).[11] These interrogatories appear to relate to plaintiff's examination, through NCI referral, by an optometrist on or about February 17, 2009. Plaintiff's injuries allegedly included damage to his eyes. *See, e.g.*, Doc. 55, ¶¶ 19, 22. Therefore, although the February 17 examination postdates the January 5, 2009 incident by six weeks, the referral for and occurrence of that examination may be relevant to show whether plaintiff suffered continuing injuries to his eyes as a result of the alleged January assault.

Specifically, these interrogatories attempt to confirm whether the three medical personnel defendants worked in the NCI medical unit on February 17, 2009, the date plaintiff claims he visited the NCI optometrist. The interrogatories also request the dates when plaintiff was referred to the NCI optometrist and when such visits actually occurred. Answers to these questions may potentially provide evidence "relevant" to the issue of whether and to what extent plaintiff's eyes were injured during the alleged assaults on January 5, 2009.[12] Consequently, plaintiff's motion to compel

[11] The Court notes that interrogatory 1 is not actually a question. It simply directs the defendants to "[p]lease state the following." Doc. 80-1, p. 2 (¶ 1).

[12] In so stating, the Court neither possesses nor expresses an opinion as to whether plaintiff's eyes were actually injured on January 5, 2009, and/or whether his optometry appointment on February 17, 2009 served to treat such injuries. Plaintiff is left to his proof on the issue of his injuries and must also withstand any objections at trial as to relevance and admissibility of evidence

responses to interrogatories 2, 4, and 5 will be granted. Defendants' objections to these interrogatories will be overruled.

With respect to interrogatory 3, plaintiff seeks to determine which NCI medical personnel "are in charge of answering inmate requests and medical grievances in the medical unit." Doc. 80-1, p. 2 (¶ 3). Perhaps plaintiff wishes to determine who was responsible for scheduling his optometry appointment in February 2009. However, as written, the question includes no time frame and instead simply asks "who is" in charge of these actions "in the medical unit." This question also references "inmate requests" and "medical grievances" without further definition or dates. In sum, in its current form, interrogatory 3 is vague, overly broad in time and scope, and unduly burdensome for the medical defendants to answer. *See* Doc. 80-1, p. 5 ("General Objections," ¶¶ 1, 5, & 7 ). The motion to compel a response to interrogatory 3 will be denied.[13]

In interrogatory number 6, plaintiff broadly queries whether any of the medical defendants "can determine nerve damage from an x-ray." Doc. 80-1, p. 8 (¶ 6). Defendants Sanders and Kay objected to the interrogatory, *id.*, p. 4 & 10 (¶ 6), but defendant Wright, who is a physician, answered, "No.", *id.*, p. 17 (¶ 6).[14] The motion to compel a response to this interrogatory is thus moot as to defendant Wright.

---

he presents.

[13] This denial in no way precludes the parties from reaching their own agreement to provide the names of the NCI personnel who processed plaintiff's inmate requests and/or medical grievances related to this action. Such names might be relevant for discovery purposes.

[14] Wright is described as a physician at NCI who conducted a physical and visual examination of plaintiff and prescribed medication for plaintiff's pain in his eyes, back, and wrists. Doc. 55, ¶ 33. His medical training may have led him to respond to interrogatory 6, whereas the two nurse defendants, perhaps lacking sufficient training, chose to object to interrogatory 6.

With respect to defendants Sanders and Kay, interrogatory 6 is vague, overly broad, and invites speculation, seeking a generalized expert opinion about radiology analysis from fact witnesses. *See, e.g.*, *United States v. Renault*, 27 F.R.D. 23, 29-30 (S.D.N.Y. 1960)(Objections to interrogatories sustained where such interrogatories "could be answered only by speculation"). No particular parameters are provided as to the kind of x-ray or the body part x-rayed. It is also unknown whether plaintiff is referring to a particular x-ray that was taken of him or to any x-ray in general. Moreover, the phrase "nerve damage" is not defined so that it remains unclear what classification or kind of nerve injury plaintiff references and/or whether he is alleging that an x-ray revealed that he sustained such an injury in this case.[15]

In addition, there has been no showing that defendants Sanders or Kay are experts in either reading x-rays (*e.g.*, x-ray technicians or radiologists) or diagnosing "nerve damage" (*e.g.*, work in the field of neurology). Sanders and Kay are both described as nurses in the NCI who refused to examine plaintiff and then later gave him medication for pain. Doc. 55, ¶¶ 22, 26. Plaintiff does not suggest that these two nurses have expertise in the field of x-rays and/or have actually taken an x-ray of him. To date in these proceedings, Sanders and Kay are simply parties and fact witnesses who must testify to the facts and matters within their knowledge, rather than speculate what one might be able to determine from an unspecified x-ray.[16]

---

[15] If plaintiff was in fact x-rayed at NCI in connection with his alleged injuries in January of 2009, he may request production of the relevant x-rays and submit them to his own radiology expert for examination and analysis.

[16] Even treating physicians are limited in the opinions they may offer in a given case. "[T]reating physicians are permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician limited to the facts in Plaintiff's course of treatment." *Barack v. American Honda Motor Co., Inc.*, ___F.R.D. __, 2013 WL 1688873, at *2 (D. Conn. April

Plaintiff's question regarding x-rays is best posed to a radiology expert. Therefore, if plaintiff wishes to acquire information regarding the general principles of reading x-rays, – *i.e.*, what may be generally gleaned from them – he may consult and/or retain a medical expert with knowledge in the field of x-rays. Defendants are not required to perform research that could as easily be performed by plaintiff or someone hired by him. *See generally* 10A Fed. Proc., L. Ed. § 26:577 (update Sept. 2013) ("Interrogatories requiring research may be found objectionable where they request data or information from research which can be carried out just as easily by the interrogating party in that the source to be searched, though not in his or her possession, is equally available to him or her."); *accord* 4 Am. Jur. Trials 1 (update Sept. 2013) (with respect to interrogatories, "an adverse party is only required to furnish information that is in his possession" and "'[w]here the party [who is questioned] does not have personal knowledge, there is a question as to the extent to which a court can require him to expend his own labor and expense to do investigation and research.").

To the extent that interrogatory 6 is vague, overly broad, invites speculation, and/or requires radiology research, plaintiff's motion to compel responses by Sanders and Kay to that interrogatory will be denied. Doc. 80-1, p. 5 ("General Objections," ¶¶ 4, 5, 7).

Turning next to the production requests, in production request 1, plaintiff requests "medical research studies and opinions" from optometrists, "including Doctor William Ehlers," on a particular proposition about African Americans developing "dark brown patches in their irises." *Id.*, p. 21 (¶ 1). Such a request is patently objectionable in that it requests defendants to research medical studies and opinions on plaintiff's behalf. As discussed *supra*, defendants have no obligation to perform such research for plaintiff, which he himself or someone on his behalf may perform. This

---

18, 2013) (internal quotations and citation omitted and emphasis in original).

request would thus "impose an undue burden or expense." *Id.*, p. 5 ("General Objections," ¶ 5).

In production requests 2 through 4, plaintiff seeks respectively "[a] copy of all medical personnel who worked in the medical unit at the N.C.I." on the date of "Feb[ruary] 17, 2009;" *id.*, p. 22 (¶ 2); "[a] copy of the medical unit log book for the date Feb[ruary] 17, 2009;" *id.* (¶ 3); and "[c]opies of all units['] log books that def[endant] Sanders signed when she passed out the evening medication on the date Jan[uary] 5, 2009;" *id.* (¶ 4). Each of these requests is overly broad, calling for information that is not relevant in this matter for discovery purposes. *See* Doc. 80-1, p. 5 ("General Objections," ¶¶ 1, 7 ). Plaintiff may inquire as to the names of medical personnel and/or medical unit log book entries pertaining to his own particular treatment, examination, and medication following his alleged injuries on January 5, 2009. He may not, however, review log books regarding all medical personnel (including those who played no role in his medical care) and/or medical records of other patients on January 5 or February 17, 2009. Names of medical personnel who had no participation in plaintiff's medical care are irrelevant. Moreover, disclosure of other patients' medical records or medication would unlawfully invade those patients' privacy. Doc. 80-1, p. 5 ("General Objections," ¶ 6 (objecting to requests that "constitute an invasion of privacy")). *See Whalen v. Roe*, 429 U.S. 589, 599 (1977) (an individual has a protected privacy interest in "avoiding disclosure of personal matters"); *Powell v. Schriver*, 175 F.3d 107, 112–13 (2d Cir.1999) (prison officials must maintain the confidentiality of previously undisclosed medical information unless disclosure is “reasonably related to legitimate penological interests”). The Court will deny plaintiff's motion to compel responses to production requests 2, 3, and 4 in their present form.

In production requests 5 and 6, plaintiff requests "[a] copy of the policy or directive of the

'Restraint Policy,' or 'Double Cell Policy,' of the prisoners in phase 1 at the N.C.I.;" Doc. 80-1, p. 22 (¶ 5); and "[a] copy of all and any handheld video footages [sic], and all and any Nice [sic] vision footages [sic] for the incident of Jan[uary] 5, 2009 in the 1 [E]ast [U]nit at the N.C.I.;" *id*., p. 23 (¶ 6). First, as to policy directives, it is conceivable that NCI may have various policy directives regarding restraints and cell occupancy. Moreover, documents of this nature may be relevant to plaintiff's case for discovery purposes in that he has alleged that he was unlawfully restrained by the defendant guards. Doc. 55, ¶¶ 23-25.

However, it is also possible that even if NCI has any relevant policy directives regarding restraint of prisoners or cell occupancy, the three medical defendants who are the subject of this motion to compel do not have access to or authority to obtain them. These three defendants may only turn over documents in their possession. In their positions as NCI medical personnel, they may not be involved in issues of prison governance or security, such as prisoner restraint or cell occupancy policies.[17] Nonetheless, because the NCI's restraint and cell policies may have some bearing on this case and defendants have failed to demonstrate with specificity why they cannot comply with this request, the defendants must respond to interrogatory 5 to indicate whether or not they actually possess such policy directives. If so, they must turn them over to plaintiff. Accordingly, the motion to compel the medical defendants to respond to production request 5, seeking restraint and cell occupancy policy directives, will be granted.

As to the video footage requested in production request 6, such footage may be relevant in

[17] In other words, even if NCI has issued policy directives that regulate treatment of prisoners in manners relevant to this case, such as the proper use of restraint, plaintiff's motion to compel is addressed exclusively to the medical personnel defendants whose roles at the prison may or may not involve dealing with prisoner restraints or cell occupancy.

this action and subject to discovery. Plaintiff recalls that video footage was taken of the "incident" or alleged assault of January 5, 2009. Such videos may provide evidence of the facts giving rise to plaintiff's claims.

Attorney Carmel Motherway, counsel for all defendants in this action, has broadly objected on behalf of "Jeffrey McGill, *et al.*" to the request for video footage of the alleged assault incidents on January 5, 2009 on the grounds that said request is "overbroad, lacking in specificity , and calls for information not reasonably calculated to lead to the discovery of admissible evidence."[18] Doc. 80-1, p. 25 (¶ 6). She has also asserted that "Northern Correctional Institution is a 'super-max facility,'" perhaps suggesting that disclosure of such video footage could potentially compromise the prison's security.[19] *Id*. Nonetheless, Attorney Motherway has agreed to "arrange for plaintiff to view the footages [sic] relating to the incident of January 5, 2009 at a time and place convenient to the corrections officers who will be arranging same."[20] *Id.*, (¶ 7). The Court thus finds that the discovery issue regarding the video footage is moot in that it appears on the papers to have been

---

18 Attorney Motherway also points out the problem that plaintiff requests defendants to turn over the video footage to Attorney William Dow, who "has not appeared as plaintiff's attorney in the . . . case." Doc. 80-1, p. 25, ¶ 6. Plaintiff remains *pro se* in this action.

19 Federal common law recognizes "a qualified executive privilege designed 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *El Badrawi v. Department of Homeland Sec*., 258 F.R.D. 198, 203 (D.Conn. 2009) (quoting *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir.1988)). The Court need not address the merits of such a privilege herein in light of defendants' agreement to schedule a time to show the footage at issue to plaintiff.

20 It is unknown whether – and perhaps even unlikely that – the medical personnel defendants have possession of the video footage taken by the guards. Their counsel, however, has agreed to obtain said footage in cooperation with prison officials and/or guards who are defendants in this action.

resolved by the parties. The motion to compel production of the video footage of the alleged assault incident on January 5, 2009 will therefore be denied without prejudice as moot.[21]

## IV. CONCLUSION

Plaintiff's motion to compel responses to interrogatories [Doc. 80] is GRANTED with respect to interrogatories 2, 4 and 5; DENIED with respect to interrogatory 3; DENIED AS MOOT as to defendant Wright with respect to interrogatory 6; and DENIED as to defendants Sanders and Kay with respect to interrogatory 6. In addition, plaintiff's motion to compel production of documents [Doc. 80] is DENIED as to requests 1 through 4, GRANTED as to request 5, and DENIED AS MOOT as to request 6.

Defendants Sanders, Kay, and Wright must provide responses to interrogatories 2, 4, and 5 and to production request 5 within thirty (30) days following the entry of this ruling, that is, on or before **December 6 , 2013.** Alternatively, Wright, Sanders, and Kay must advise the Court that they have previously resolved with plaintiff the discovery disputes regarding interrogatories 2, 4, and 5 and/or production request 5. Upon submission of the medical defendants' responses to the plaintiff and/or notice to the Court of resolution of all discovery disputes resolved by this Ruling, the discovery period shall close.

The Court, having allowed an extensive period for discovery at the parties' requests, hereby

---

[21] Production request 7 is not the subject of plaintiff's motion to compel. The Court, however, notes that rather than comprising a separate request, production request 7 relates to request 6 in that plaintiff requests "that [A]ttorney Motherway schedule a reasonable date and time for him to view all the requested footages [sic] of the incident of Jan[uary] 5, 2009, at the N.C.I." Doc. 80-1, p. 23 (¶ 7). As set forth *supra*, Attorney Motherway has agreed to make such an accommodation to plaintiff so that he may view the videos. In short, this related request is also moot.

issues the following case deadlines:

> Discovery must be completed on or before **December 20, 2013**; dispositive motions, if any, shall be filed on or before **January 21, 2014;** the parties shall each file separate pre-trial memoranda on or before **February 20, 2014**, or within thirty (30) days after the Court rules on the last-filed dispositive motion, whichever is later; and the case shall be trial ready on or before **March 24, 2014**, or within thirty (30) days after the parties file the last pre-trial memorandum, whichever is later.[22]

In the interests of justice, if the parties determine that, prior to trial, settlement negotiations might assist them in expeditiously and justly resolving this case, they may file a joint motion requesting referral of the case for a settlement conference before a magistrate judge.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
November 6, 2013

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[22] Generally, the Court requires the parties to file a joint trial memorandum in a civil case. However, in light of the plaintiff's present incarceration, the Court will allow all parties the opportunity to file separate pre-trial memoranda. Plaintiff is advised that because he "is proceeding *pro se*," the Court will read his papers "liberally and interpret[] them to raise the strongest arguments suggested therein." *Nails v. Laplante*, 596 F.Supp.2d 475, 478 (D.Conn. 2009) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).